

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 1:14CR310 (JCC) |
| ) | |
| JUAN ANTONIO PENA-TORRES, ) | |
| ) | |
| Defendant. ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on the Government's Motion in Limine Concerning the Admissibility of a Third Party Declaration [Dkt. 69]. Defendant Juan Antonio Pena-Torres ("Defendant" or "Pena-Torres") has submitted a third-party declaration in which the declarant confesses that he, rather than Defendant, committed the conduct underlying Count 1 of the indictment. For the following reasons, the Court will **deny** the motion.

**I. Background**

Defendant has been charged with (1) distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) ("Count 1"); (2) possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) ("Count 2"); and (3) possession of a firearm with a removed, altered, and obliterated serial number in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B) ("Count 3"). (Superseding Indictment [Dkt. 37]

1

at 1 [hereinafter Indictment].)[1] Defense counsel has submitted a declaration of Victor Gonzalez ("Gonzalez") confessing to the sale of cocaine on August 15, 2013, which is Count 1 of the Indictment. Gonzalez has invoked his Fifth Amendment privilege against self-incrimination and has refused to testify at trial. Prior to trial, anticipating this situation, both parties submitted briefs on the issue of whether the declaration is admissible. After the jury was dismissed for the day, the Court held an evidentiary hearing on the issue. Having been fully briefed and argued, this motion is ripe for disposition.

## II. Analysis

Both the government and Defendant agree that the rule at issue here is Federal Rule of Evidence 804(b)(3). The parties agree that Gonzalez is unavailable under the rule because he is invoking the Fifth and that the declaration is a statement against penal interest. The only question is whether the statement is "supported by corroborating circumstances that clearly indicate its trustworthiness[.]" Fed. R. Evid. 804(b)(3)(B).

The requirement of corroborating circumstances is "'designed to protect against the possibility that a statement would be fabricated to exculpate the accused.'" *United States*

---

[1] At the close of the government's case, the Court granted Defendant's Rule 29 motion for acquittal as to Counts 2 and 3.

2

*v. Bumpass*, 60 F.3d 1099, 1102 (4th Cir. 1995) (quoting *United States v. Brainard*, 690 F.2d. 1117, 1124 (4th Cir. 1982)). "The rule requires not a determination that the declarant is credible, but a finding that the circumstances clearly indicate that the statement was not fabricated. It is the statement rather than the declarant which must be trustworthy." *Id.* The offering party must "clearly establish" by corroborating circumstances that the statement is trustworthy. *Id.* This does not mean that that the corroborating circumstances must "remove all doubt with respect to the hearsay statement." *Id.* While the burden on the offering party "should not be too high . . . it must be remembered that admission of such hearsay leaves the party against whom it is offered without the important benefit of cross examination." *Id.* Corroboration must be sufficient such that "cross examination would add little to test the hearsay's reliability." *Id.*

The Fourth Circuit has identified six factors to determine whether sufficient corroboration exists to justify admitting a statement under the rule:

> (1) whether the declarant had, at the time of making the statement, pled guilty or was still exposed to prosecution for making the statement, (2) the declarant's motive in making the statement and whether there was a reason for the declarant to lie, (3) whether the declarant repeated the statement and did so consistently, (4) the party or parties to whom the statement was made, (5) the

3

>  relationship of the declarant with the accused, and (6) the nature and strength of independent evidence relevant to the conduct in question.

*Id.* (citing *Brainard*, 690 F.2d at 1125). Each factor will be considered.

### 1. Whether Declarant Was Still Exposed to Prosecution at the Time the Statement Was Made (Factor 1)

The government argues that the possibility it may be judicially estopped from prosecuting both Gonzalez and Defendant for the same crime undermines the declaration's trustworthiness. (Gov't's Mot. [Dkt. 69] at 6.) Defendant responds that there is "no reason . . . to believe that the declarant was motivated to give a false statement based upon his understanding of the law of judicial estoppel." (Def.'s Opp. [Dkt. 70] at 6.) Defendant is correct in noting there is nothing to suggest Gonzalez was aware he might be immune from prosecution when he signed the declaration. Furthermore, the government would only be judicially estopped from pursuing this charge against the declarant if it continued to prosecute Defendant for the <u>same</u> crime. As the government concedes, nothing precludes it from charging Gonzalez with distribution and proceeding on an alternative theory of liability against Defendant. (Gov't's Mot. at 6.) Therefore, the threat of criminal prosecution was very real when Gonzalez made the statement. As such, this factor weighs in favor of admitting the declaration.

4

### 2. Declarant's Motivation in Making the Statement and Relationship to the Defendant (Factors 2 and 5); The Party or Parties to Whom the Statement was Made (Factor 4)

The government's primary argument here is that the Federal Defender Service's ("FDS") investigator Pascual Velarde ("Velarde") procured the statement from Gonzalez. Velarde testified at the evidentiary hearing. According to Velarde, he met Gonzalez on September 9, 2014 at a McDonald's in Manassas, Virginia. He identified himself as working with defense counsel, who represented Defendant. Nothing of substance came from that meeting. Two to three days later, Velarde received a phone call from Gonzalez. Gonzalez told Velarde had something to tell him that he did not feel comfortable discussing in the presence of others. Velarde went to HT Motor Sports, Defendant's business and where declarant was and is employed, to talk to him. Gonzalez told Velarde he wanted to take responsibility for what he did. He told Velarde it was he, not Defendant, who sold the undercover officer cocaine on August 15, 2013. He also told Velarde that the cooperating witness had come to the shop several times to buy drugs from the declarant.

After the meeting, Velarde went back to his office and typed up the information Gonzalez had given him. Velarde called Gonzalez on the phone "get the facts straight" with him. On Monday, September 15, 2014 Velarde met with Gonzalez and gave

5

him the statement. Together, they read the declaration line by line. Gonzalez told Velarde he needed time to think about it and make sure it was correct. Velarde told Gonzalez to call when he was ready to discuss it further. Gonzalez called the next day, asking Velarde to come to the shop. Gonzalez said he had reviewed the whole statement and was comfortable with it. Gonzalez signed it, albeit with handwritten revisions that he added and initialed. According to Velarde, Gonzalez was motivated to come forward because he wanted to take responsibility for his actions and tell the truth.

At some point during the course of their interactions, Velarde advised Gonzalez to talk to an attorney, but Velarde did not facilitate access to one. At all times during his contact with Gonzalez, Velarde represented that he worked for FDS and made clear that office was representing Defendant in this case. Velarde met with Gonzalez after he signed the statement, including a meeting on or about September 25, 2014 at which defense counsel was also present. Gonzalez was not represented by counsel at this meeting. According to Velarde, Gonzalez's statements to him about Gonzalez's role in the August 15 drug transaction were always consistent.

The Court finds the circumstances surrounding the signing of the declaration are sufficient corroboration of the declaration's trustworthiness. Gonzalez, on his own initiative,

6

reached out to Velarde. Velarde did not pressure Gonzalez into signing the declaration. He reviewed the declaration with Gonzalez over the phone and in person. Velarde let Gonzalez sleep on the final version before he signed it. Velarde was always upfront with Gonzalez about his ties to FDS and Defendant. He also advised Gonzalez to seek his own counsel. Therefore, these factors weigh in favor of admissibility.

### 3. Whether Declarant Repeated the Statement and Did So Consistently (Factor 3)

As noted earlier, Velarde stated Gonzalez's account remained consistent during his course of interactions with Gonzalez. At the evidentiary hearing, defense counsel represented to the Court that, from conversations with Gonzalez's counsel, Gonzalez adheres to the version of facts as recounted in the declaration.

The government calls the Court's attention to several inconsistencies within the declaration. The typed language in Paragraph 3 reads: "During the time I have known [Defendant], I have never seen [Defendant] using, storing, selling, or dealing with marijuana, cocaine, or any other illegal/legal drugs in his shop or anywhere else." In handwriting, the phrase "until he did me a favor on August 29" was added to the end of that sentence. This change is endorsed with what appears to be the declarant's initials. In Paragraph 8 of the declaration, the

7

typed language reads, in relevant part: "This was the first and only time that I sold any drugs to [the undercover officer]. . . . [Defendant] never sold any drugs to anybody . . . ." In handwriting, the declarant amended the second statement to state "[Defendant] never sold any drugs to anybody <u>on August 15, 2013</u>." (emphasis added). This change is also endorsed with Gonzalez's initials. From this, the government infers that Gonzalez sold the undercover officer cocaine on August 15, but Defendant "did declarant a favor on August 29" by selling declarant's cocaine to the undercover officer. (Gov't's Mot. at 10.) Furthermore, Gonzalez claims that August 15 was the "first and only time" he sold drugs to the undercover officer, but also implies in the declaration that Defendant sold drugs on his behalf to the undercover officer on August 29. If the declaration is admitted, the government will not have an opportunity to cross examine Gonzalez and tease out these inconsistencies. To the extent the government wishes to probe these handwritten changes, it may do so through cross examination of Velarde and may also incorporate its argument on this point into closing arguments. Accordingly, this factor weighs in favor of admissibility.

### 4. Nature and Strength of Independent Evidence Relevant to the Conduct in Question (Factor 6)

The government rests its argument here on the supposed strength of the recording of the controlled buy. However, the sound on the tape is barely audible and the corresponding video is not much better. Therefore, the Court finds this factor weighs in favor of admissibility.

### III. Conclusion

In light of the foregoing, the weight of the factors compels a finding that the declaration is "supported by corroborating circumstances that clearly indicate its trustworthiness." Therefore, it will be admitted under Federal Rule of Evidence 804(b)(3).[2]

/s/
James C. Cacheris
United States District Judge

October 29, 2014
Alexandria, Virginia

James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE

---

[2] In its brief, the government requests a six-week continuance to investigate Gonzalez's claim. (Gov't's Mot. at 13-14.) To the extent that request is not moot, it is denied.

9