IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
UNITED STATES OF AMERICA     )
                             )
     v.                      )    1:14CR310 (JCC)
                             )
JUAN ANTONIO PENA-TORRES,    )
                             )
     Defendant.              )
```

## M E M O R A N D U M   O P I N I O N

This matter is before the court on Defendant Juan Antonio Pena-Torres' ("Defendant") Motion for New Trial. [Dkt. 87.] For the following reasons, the Court will deny Defendant's Motion.

### I. Background

On September 11, 2014 a grand jury in the Eastern District of Virginia returned a three-count indictment against Defendant, charging him with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) ("Count I"); carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) ("Count II"); and knowingly possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k). [Dkt. 18.] A grand jury returned a superseding indictment on October 14, 2014, charging the same three counts. [Dkt. 37.]

On October 17, Defendant waived formal arraignment, pled not guilty, and demanded a jury trial. [Dkt. 50.]

The Court conducted a two-day jury trial on October 28 and 29. Following the presentation of the government's case-in-chief, Defendant filed a written motion under Federal Rule of Criminal Procedure 29, seeking judgment of acquittal on Count II. [Dkt. 73.] At a bench conference, Defendant moved for a judgment of acquittal on Count III as well. The Court granted both motions. [Dkts. 75, 76.] The jury was instructed that only Count I remained for their consideration. [Dkt. 77.]

The jury retired to deliberate in the afternoon of the second day of trial. [*Id.*] They were excused at approximately 5:00pm and instructed to return the following morning at 10:00am to continue deliberations. [*Id.*] At approximately 11:30am, the jury returned to the courtroom with a guilty verdict as to Count I. [*Id.*]

Defendant timely filed this motion, alleging three grounds for a new trial: (1) the prosecutor improperly asserted that a confidential informant "risked his life" to participate in the investigation in closing rebuttal; (2) the prosecutor improperly denigrated the defense investigation of exculpatory evidence; and (3) evidence from the dismissed counts prejudiced Defendant's defense. (Def.'s Mot. for a New Trial [Dkt. 87] at 1.) Defendant argues that both individually and cumulatively,

these errors warrant a new trial. (*Id.* at 15.) Having been fully briefed and argued, this motion is ripe for disposition.

## II. Legal Standard

Federal Rule of Criminal Procedure 33 provides, in relevant part, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Whether to grant or deny a motion for new trial rests within the broad discretion of the district court. *See United States v. Smith*, 451 F.3d 209, 216–17 (4th Cir. 2006).

There are two grounds for granting a motion: "newly discovered evidence" or any other reason. *United States v. Fultz*, 18 F. Supp. 3d 748, 754 (E.D. Va. 2014); *see also* Fed. R. Crim. P. 33(b). The power to grant a new trial based on the "interest of justice" standard should be used "where it is demonstrated that the fundamental fairness or integrity of the trial result is substantially in doubt." *United States v. Jennings*, 438 F. Supp. 2d 637, 642 (E.D. Va. 2006). There is "a strong interest in ensuring that convictions are not allowed to stand if infected by, or based on, an incorrect application of the governing law." *Id.* The power to grant a new trial should be used sparingly. *Id.* (citing *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir.1985)).

## III. Analysis

3

## A. Prosecutorial Misconduct

Defendant's first two grounds for a new trial concern whether some of the prosecution's statements constitute misconduct. "'The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *United States v. Higgs*, 353 F.3d 281, 330 (4th Cir. 2003) (quoting *United States v. Mitchell*, 1 F.3d 235, 240 (4th Cir. 1993)). In this circuit,

> [t]he test for reversible prosecutorial misconduct generally has two components: that (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.

*United States v. Mason*, 344 Fed. App'x 851, 853 (4th Cir. 2009) (quoting *Mitchell*, 1 F.3d at 240).

In evaluating prejudice, a number of factors should be considered:

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

*Mason*, 344 Fed. App'x at 853 (quoting *Mitchell*, 1 F.3d at 241). The Fourth Circuit also considerers (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel and (6) whether curative instructions were given to the jury. *United States v. Wilson*, 135 F.3d 291, 300 (4th Cir. 1998). These factors are examined in the context of the entire trial, and no one factor is dispositive. *Id.*

### 1. Prosecutor's Comments During Closing Rebuttal

Defendant argues that it was error for the prosecutor to have stated in her closing rebuttal that the confidential informant, who did not testify in the case, risked his life to introduce the undercover officer to Defendant.

During closing rebuttal, the prosecutor argued:

> Ladies and gentlemen, this is a serious case. It's a serious offense being charged.
> The defendant has asked you to think about what ifs, what abouts: What about the fingerprints? What about phone records? What about the informant who risked his life to introduce the officer?
> But your task, ladies and gentlemen, is not – as the defendant has told you, is not to speculate. It's not to think about the what-ifs and what abouts and what might be and what a perfect case would look like. Your job is to evaluate what is.

(Gov't's Closing Arg. [Dkt. 91] 12:6-16.) There was no evidence in the case to support the statement that the confidential informant risked his life in making the introduction.

Therefore, the prosecutor's statement was improper. *See United States v. Gentles*, 619 F.3d 75, 80 (1st Cir. 2010) (finding prosecutor's comment that "the confidential informants had undertaken risks" in testifying against defendant to be improper because no evidence that defendant was violent or had threatened the confidential informants); *Wilson*, 135 F.3d at 299 (finding prosecutor's murder argument "highly improper" because it was not supported by the evidence and offered at a time when defendant and his lawyer had no chance to investigate the offense).

The government argues that the remark "was narrow and explicitly tied to the evidence that had been produced at trial[.]" (Gov't's Reply [Dkt. 96] at 5.) According to the government, testimony at trial established that "(a) that the informant helped introduce the undercover officer to the defendant" and "(b) that undercover operations and controlled buys carry inherent risks and for which routine safety precautions are taken, and which required the officer to cut short a previous attempted controlled buy *because the batteries* [powering his recording equipment] *would run out* – not because of any specific threat from the defendant." (*Id.*) (emphasis in original). The Court does not find this persuasive. Contrary to the government's assertion, the statement was not explicitly tied to a reference about the general risks of undercover law

6

enforcement operations.  Rather, the statement is ambiguous about the source of the threat.  Therefore, the remark was improper.

The question remains, however, as to whether this statement prejudiced Defendant's substantial rights and deprived him of a fair trial.  While the comment was improper, there was no prejudice.  The Court turns first to the degree to which the prosecutor's remark had a tendency to mislead the jury and to prejudice the accused.  The prosecutor's comment was "unintentional, brief, and benign," and thus did not have a tendency to mislead the jury.  *See Gentles*, 619 F.3d at 83; *cf. United States v. Rios*, 611 F.2d 1335, 1343 (10th Cir. 1979) (finding prejudice where prosecutor stated that key witnesses were in federal custody, leading to "an inference the prosecutor would not state," because case depended on credibility of defendant's testimony and that of the witnesses).

Second, that sentence was the only time the prosecutor referenced such danger.  Thus, it appears that the comments were isolated rather than extensive.  Nonetheless, Defendant argues this factor favors a prejudice finding because of the timing of the statement (during rebuttal, when Defendant had no opportunity to respond) and the trial's short duration.  (Def.'s

Mot. at 9.)[1]  Though the trial was short, the prosecutor's statement was just seconds of an approximately eight-hour trial. Therefore, this factor, whether the remarks were extensive or isolated, weighs against a finding of prejudice.  *See United States v. Curry*, 993 F.2d 43, 46 (4th Cir. 1993) (finding that prosecutor's comments during rebuttal, even if improper, were not prejudicial because they were isolated, unintentional, and there was other overwhelming evidence of guilt); cf. *Wilson*, 135 F.3d at 300 (stating that improper statements "were extensive" in the context of the short trial and noting that it "was not a case where the effect of improper conduct was diluted by days of testimony and argument about other matters.").

For similar reasons, the Court finds the fourth factor, whether the comments were deliberately placed before the jury to divert attention to extraneous matters, also weighs against a finding of prejudice.  The prosecutor spent the rest of the rebuttal discussing issues that were properly before the jury.  Therefore, this factor indicates that Defendant was not prejudiced by the statement.

The fifth factor, whether defense counsel invited the comments by his improper comments, is not applicable here.  One

---

[1] While it is true Defendant did not have a chance to respond, Defendant did not make an objection to this statement during the trial. (*See* Gov't's Closing Arg. [Dkt. 91] at 12.)  Though perhaps it was a tactical move to *not* make such an objection, doing so would have afforded the Court an opportunity to consider the statement before any potential prejudice to Defendant's trial rights may have occurred.

of defense counsel's "major points" was that the government failed to call the confidential informant, the one person who could have corroborated the officer's testimony as to who sold the drugs charged in Count I. (Def.'s Mot. at 9.) It was entirely proper for defense counsel to make that argument, and thus this factor tends to show Defendant was prejudiced by the remark.

The sixth factor considers the effect of a curative instruction. Defendant did not request one. While the Court did not issue an instruction directed specifically at this statement, the Court instructed the jury in the closing charge that the attorneys' arguments were not evidence. Given the Court's earlier finding that the statement was brief and benign, such an instruction was sufficient to cure any resulting prejudice. *See Gentles*, 619 F.3d at 82.

Finally, Defendant argues that the closeness of this case warrants a finding of prejudice. (Def.'s Mot. at 10.) Defendant correctly notes that the jury deliberated for over four hours. (*Id.*) The jury submitted several questions, which Defendant maintains suggests it could not reach a verdict. (*Id.*) While the Court cannot say with certainty what the jury was thinking as it deliberated, it seems unlikely that this single, isolated statement was a deciding factor in the jury's

guilty verdict. Therefore, this factor weighs against a prejudice finding.

Considering all of these factors, the Court finds that while the remark was improper, it did not prejudice the Defendant's trial rights. Therefore, a new trial is not warranted on these grounds. *See Mitchell*, 1 F.3d at 240 ("Improper remarks during closing argument do not always mandate retrial.") (citations omitted) (internal quotation marks omitted).

### 2. Denigration of Defense's Investigation of Exculpatory Statement

Defendant argues that there was additional prosecutorial misconduct in that the prosecutor "through its questioning [of Pascual Velarde, an investigator with the Federal Public Defender's Office] implied" that defense counsel had an obligation to obtain a lawyer for a third-party witness prior to obtaining an inculpatory statement from that witness. (Def.'s Mot. at 11.) Defendant does not cite to any portion of the transcript in support of this argument. Defendant also argues that the prosecutor improperly suggested that defense counsel should have disclosed its discovery of an exculpatory witness to the government. (*Id.*) In response, the government maintains that its cross examination of Velarde was "tough but fair." (Gov't's Opp. [Dkt. 90] at 5.) It also asserts that at

least some Jencks Act material must exist as to Velarde and that it never received any prior to trial. (*Id.* at 8 n.8.)

The prosecutor began her cross by asking Velarde a series of questions designed to imply that Defendant had an obligation to turn over information about Victor Gonzalez, an exculpatory witness. For example, the prosecutor asked Velarde if he took the third-party witness, Victor Gonzalez ("Gonzalez"), to a Federal Bureau of Investigations ("FBI") Office so that Gonzalez could give an FBI agent his confession. She also asked Velarde if he was familiar with the rights of a potential defendant. Velarde testified that Gonzalez knew the statement could expose him to criminal liability. He also stated he told Gonzalez he was free to consult with an attorney if Gonzalez wanted. The prosecutor then asked if Velarde or the Federal Public Defender's Office ("FPD") provided Gonzalez an attorney at that time, to which Velarde responded no. She then followed that question by asking Velarde to confirm, which he did, that the FPD did not provide or request counsel for Gonzalez until <u>after</u> the declaration was signed. There was no objection to this line of questioning.

Shortly thereafter, defense counsel requested a bench conference. He asked the Court to explain to the jury that a defendant has no obligation to share its witnesses with the government and that Velarde could not unilaterally decide to

11

disclose information about Gonzalez because Velarde's investigation materials were protected by the work-product privilege. Defense counsel also noted that he provided a redacted copy of the declaration three weeks before the discovery deadline out of an abundance of caution. He then provided a unredacted copy one week before trial pursuant to the discovery order. After the bench conference, the Court instructed the jury that Defendant had no obligation to turn over discovery to the government. The prosecutor continued her cross examination, moving on to other topics.

> During her closing argument, the prosecutor argued:
>
> Who met with Victor, even advising him that an attorney might be wise, but not providing him access to counsel until after they got him to sign the declaration? The defendant and his attorneys.
> Who waited until a week before trial – excuse me. Who waited until the month of trial to present the declaration to the Government, instead of going to Government investigators when the declaration was signed more than a month ago? The defendant and his attorneys.

(Gov't's Closing Arg. [Dkt. 91] 6:11-19.) There was no objection to this argument.

As stated earlier, a new trial is warranted where the prosecutor's remarks were both improper and prejudiced Defendant. *Mason*, 344 Fed. App'x at 853. Here, the remarks were proper. The Court admitted the third-party declaration

12

into evidence and told the prosecution that it could draw out credibility issues on cross examination. The government's cross examination did just that. It probed the circumstances surrounding the signing of the declaration, including Velarde's contact with Gonzalez, whether Gonzalez was aware of potential criminal liability, and whether Gonzalez was represented by counsel. Since Gonzalez invoked his Fifth Amendment privilege against self-incrimination, cross examining Velarde was the only opportunity it had to discredit the third-party declaration. Given that reality, the Court cannot say that the government's questioning was improper. *See United States v. Caudle*, 606 F.2d 451, 457 (4th Cir. 1979) ("A full cross-examination of a witness upon the subjects of his examination in chief is the right, not the mere privilege, of the party against whom he is called."). Additionally, any impropriety that may have resulted from the cross examination was remedied when the Court issued a curative instruction.

As the cross examination was proper, there was no resulting prejudice. Therefore, a new trial is not warranted.

### B. Prejudicial Spillover from Evidence Related to the Dismissed Counts

Defendant argues that "a significant portion of the evidence at trial related solely to the counts that were dismissed" and that a new trial is warranted because of the

prejudicial spillover effect of this evidence.  (Def.'s Mot. at 13.)  Appellate courts considering this challenge must determine whether evidence admitted to support a reversed count prejudiced the remaining counts to warrant their reversal as well.  *United States v. Hornsby*, 666 F.3d 296, 311 (4th Cir. 2012) (citing with approval to *United States v. Rooney*, 37 F.3d 847 (2d Cir. 1994)); *United States v. Livingston*, 63 Fed. App'x 106, 107 (4th Cir. 2003) (same).

In evaluating such a claim, courts look to several factors to determine whether the totality of the circumstances require reversal of some or all of the remaining counts.  First, courts examine whether the evidence on the dismissed count "would have tended to incite or arouse the jury into convicting the defendant on the remaining counts."  *Rooney*, 37 F.3d at 855; *see also Livingston*, 63 Fed. App'x at 107-08.  Second, courts look to the similarities and differences between the evidence on the dismissed count and the remaining counts.  *Rooney*, 37 F.3d at 855.  Where the dismissed and the remaining counts arise out of similar facts, and the evidence introduced would have been admissible as to both, courts have determined the defendant suffered no prejudice.  *Id.; Livingston*, 63 Fed. App'x at 108.  Finally, courts look to the strength of the government's case on the counts in question.  *Rooney*, 37 F.3d at 855.

The bulk of the evidence in the case related to the drug transaction, the conduct that was charged in Count I and the sole remaining count before the jury. Defendant does not contest that the gun itself would likely have been admissible at a trial only on Count I. (Def.'s Reply at 13.) The only other spillover evidence from the dismissed counts is two of the government's five witnesses: Erich D. Smith, a firearms expert who testified about the obliterated serial number, and Daniel M. Kerwin, an expert who testified on the firearm's nexus with interstate commerce. In a trial focused on Count I, these experts would not have been necessary. However, their testimony did not "tend[] to incite or arouse the jury into convicting the defendant on the remaining counts." Furthermore, there was sufficient evidence for the jury to convict on Count I such that any prejudice resulting from the admission of the spillover evidence was harmless.

Defendant also contends that the government would not have been permitted to argue in its opening that Defendant unlawfully possessed a firearm in furtherance of a drug trafficking crime. (Def.'s Mot. at 13-14.) As noted earlier, attorneys' arguments are not evidence in the case. Neither are the indictments. Therefore, the prosecutor's opening statement relating to the § 924(c) charge is not evidence on a dismissed

count and could not have prejudicially impacted Defendant's trial rights.

   **C. Cumulative Effect**

   In addition to asserting that each of these errors is a sufficient independent ground to merit a new trial, Defendant maintains that the combined effect of all of these alleged errors require a new trial.  Pursuant to the cumulative error doctrine, "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009) (citations omitted) (internal quotation marks omitted).  To satisfy this requirement, such errors must "so fatally infect the trial that they violated the trial's fundamental fairness." *Id.* Generally, however, if none of the claims are error, courts will "decline to employ the unusual remedy of reversing for cumulative error." *Id.*  When "none of [the] individual rulings work[ ] any cognizable harm, ... [i]t necessarily follows that the cumulative error doctrine finds no foothold." *Id.*  Since none of the individual claims are error, the Court declines to apply the cumulative error doctrine.

Other courts have recognized that "even if certain trial errors, taken in isolation, appear harmless, the accumulation of errors effectively undermines due process and demands a fresh start." *United States v. Sepulveda*, 15 F.3d 1161, 1195-96 (1st Cir. 1993); *see also United States v. Catton*, 89 F.3d 387, 389 (7th Cir. 1996) (stating that errors must be weighed jointly). As the First Circuit stated in *Sepulveda*, "[i]ndividual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect. In other words, a column of errors may sometimes have a logarithmic effect, producing a total impact greater than the arithmetic sum of its constituent parts." *Sepulveda*, 15 F.3d at 1995-96. Here, even when viewing the perceived errors together, the cumulative effect is <u>not</u> "so fatal that [the cumulative errors] violated the trial's fundamental fairness." *Basham*, 561 F.3d at 330. Therefore, a new trial is not warranted on grounds of cumulative error, either.

### IV. Conclusion

For the foregoing reasons, Defendant's motion for a new trial is denied. An appropriate order will issue.

|  | /s/ |
|---|---|
| December 18, 2014 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |